Noel **DANA**, Petitioner, Appellant,

v.

**Raymond J. TRACY**, Sheriff, Washington County, Respondent, Appellee.

No. 6659.

United States Court of Appeals
First Circuit.

Heard March 7, 1966.

Decided May 12, 1966.

D. C. Gellers, Eastport, Me., for appellant.

Jerome S. Matus, Asst. Atty. Gen., with whom Richard J. Dubord, Atty. Gen., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

The petitioner, a Maine Passamaquoddy Indian, seeks a writ of habeas corpus to obtain his release from serving the last five hours of sentence resulting from state court convictions for driving under the influence of intoxicating liquor and operating a motor vehicle after suspension of his license. His only defense has been a plea to the jurisdiction, the alleged crimes having been committed on an Indian reservation, petitioner asserting that the federal government has exclusive jurisdiction under 18 U.S.C. §§ 1151–1153. His petition was denied by the federal district court on the ground that he had not exhausted his state remedies.

On June 19, 1965, petitioner was arrested on the Pleasant Point Indian Reservation in Washington County, Maine, and charged with the above offense, together with aggravated assault and battery and public intoxication. Scheduled to be arraigned on June 21, he posted an unspecified amount of cash bail. Petitioner appeared before the state district court on June 28. The court declared the bail forfeited for failure to appear on the earlier date, although petitioner alleges that the matter had been continued by agreement of the parties. At this time petitioner pleaded not guilty and challenged the court's jurisdiction on all four charges. The case was thereupon continued until July 12, petitioner being free on his personal recognizance. On July 12 the judge ruled that the court had jurisdiction, a *nolle prosequi* was entered as to the charges of assault and battery and public intoxication, hearing on the merits was waived, petitioner was found guilty.

Fines of $150 on one charge and $50 on the other were imposed, or, in the event of non-payment, petitioner was to be committed to jail. The sentences were concurrent, running at the rate of $5 a day for a total of thirty days. Petitioner appealed to the October term of the state superior court. Bail was set at $300, with the alternative of two real estate sureties. Petitioner alleges that he requested and was denied a half hour's continuance to seek such sureties. He was then committed to jail.

On July 20 he withdrew his appeal, so that his time in jail would begin to run on his sentences. On August 5 a petition for writ of habeas corpus was filed in the federal district court by petitioner's attorney, who had represented him from the beginning. The district judge being then ill and this court not being readily accessible because of vacancies and temporary absence, petitioner, on August 13, directed his petition to any Justice of the United States Supreme Court. On August 17 Justice Black ordered the matter transferred for hearing and determination to the Maine federal district court. At the request of petitioner's counsel, a judge of the Maine superior court, at 7:00 p. m. on August 17, granted a stay of execution of the balance of petitioner's sentence—which then had five hours to run—"pending final determination of the writ of Habeas Corpus". Under the terms of the stay, petitioner is now in the custody of his attorney and enjoined from leaving the state of Maine pending this determination.

Thereafter, in the federal district court, petitioner requested admissions of the state that only one Passamaquoddy Indian had served on a trial jury, that none had ever served on a grand jury, and that Passamaquoddy Indians could not vote for members of the lower house of the Maine legislature. The district

court sustained objections to such requests and subsequently dismissed the petition in its memorandum and order of November 8, 1965 "because of the failure of the petitioner to exhaust the remedies available to him in the courts of the State of Maine as required by 28 U.S.C. § 2254."[1] The specific remedy identified by the district judge is the Maine Post-Conviction Relief Act, 14 Me.Rev.Stat.Ann. § 5501 et seq.

The relevant parts of this statute are set forth in the margin.[2] A reading of this legislation indicates that an accused who has been convicted, who claims that he is illegally imprisoned, if he has not waived error, can seek his release or the setting aside of his conviction through a writ of habeas corpus. The law further specifies that the state can respond within 20 days or a shorter time as a judge may determine. 14 Me.Rev.Stat.Ann. § 5505.

Before we reach the issue of exhaustion of state remedies, we face several threshold arguments petitioner has put to us.[3] All go to the point that in this case exhaustion of state remedies is not required—first, because "special circumstances" exist which warrant waiving the requirement; second, because pursuing state remedies would be futile in view of "the wall of substantive state law" contrary to petitioner's case; and third, that courts have never applied the exhaustion requirement to Indians seeking federal protection under 18 U.S.C. §§ 1151–1153.

As to "special circumstances", this exception to the general principle of requiring exhaustion of state remedies has been applied in cases such as those involving federal officers, petty offenses threatening to multiply in the state courts, and situations where theoretically available state processes are in fact ineffective to protect basic rights. Thomas v. Teets, 9 Cir., 1953, 205 F.2d 236, cert. denied, 346 U.S. 910, 74 S.Ct. 240, 98 L.Ed. 407 (imminent execution of petitioner). The first two kinds of cases have no application here, but, as will be apparent, we give weight to the third ground in shaping our disposition but not to the extent of granting the writ.

As to petitioner's allegation that his chances of securing favorable action

---

1. 28 U.S.C. § 2254.
    "§ 2254.   State custody, remedies in State Courts
    An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

2. 14 Me.Rev.Stat.Ann. § 5502 provides:
    "§ 5502.   Post-conviction habeas corpus
    Any person convicted of a crime and incarcerated thereunder * * * who claims that he is illegally imprisoned * * * may institute a petition for a writ of habeas corpus seeking release from an illegal imprisonment, correc-

tion of an error of law of record, or to set aside the plea, conviction and sentence, provided that the alleged error has not been previously or finally adjudicated or waived in the proceeding resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction."

3. We pass over petitioner's argument that the district court erred in denying his requests for admissions. They would relate to a defense buttressed on denial of procedural due process but petitioner has frankly admitted that his case "is not grounded so much on Fourteenth Amendment violations" as that its gravamen lies "in the even more exceptional circumstances of state usurpation of exclusive federal jurisdiction * * *." The requested admissions are not relevant to the issue raised by the pleas to the jurisdiction, or by the petition itself.
    We also dismiss petitioner's contention that the order of transfer of this matter by Justice Black to the district court for hearing and determination was in any sense a ruling for this case that exhaustion of state remedies was not required.

in the courts of Maine are slim because of the unlikelihood of existing case law being changed, we observe that this is not the kind of "rare case and peculiar urgency", involving repeated adverse rulings by the state courts in violation of constitutionally protected procedural safeguards which Boyd v. O'Grady, 8 Cir., 1941, 121 F.2d 146, and other similar cases cited by petitioner have held to justify federal intervention without prior exhaustion of state remedies.

▮ Petitioner's pessimism over obtaining a favorable state court decision on his jurisdictional point is based principally on State v. Newell, 1892, 84 Me. 465, 468, 24 A. 943, 944, which stated that Maine Passamaquoddy Indians " * * * are as completely subject to the state as any other inhabitants can be." We cannot say, absent consideration of the merits, that this is "a wall of state substantive law contrary to the federal law". To deprive the Maine courts from passing on this issue for this reason is to assume in advance the validity of petitioner's jurisdictional plea.

The cases cited by petitioner for the proposition that courts have always overlooked the requirement of exhaustion in cases involving Indians seeking the invoking of federal jurisdiction stand on quite a different footing. For they are cases where the federal courts felt that the state challenges to exclusive federal jurisdiction were, under the circumstances, unfounded.[4] We cannot take this position here. Indeed, to do so would be to beg the final question posed by the pleas to the jurisdiction.

▮ We therefore feel compelled to consider the state remedies available to petitioner. The availability of such remedies should be assessed as of the time when application was made for the writ of habeas corpus. Fay v. Noia, 1963, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837. At this time, petitioner's state court sentence had only five hours to run —an exceedingly short time in which to accomplish legally operative action. While it is true as the state's attorney points out, that response by the state can be ordered within a shorter period than twenty days, it is quite possible that petitioner's sentence could expire before a decision denying the writ is even communicated to the parties.

▮ But Fay v. Noia, supra, at 438, 83 S.Ct. at 849, sets forth another guideline for judgment: "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." In facing the question whether petitioner, in withdrawing his appeal, forfeited his state remedies, we do not purport to prejudge the Maine courts on the question of abandonment or forfeiture. All we examine is the question whether there was such a deliberate by-passing as to persuade us to exercise our discretion in denying federal access to petitioner. Not only does Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. at 849, make clear that the test is whether a habeas applicant "understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state

4. For example, In re Lincoln, N.D.Cal., 1904, 129 F. 247, involved an Indian on property to which the United States held legal title. In United States ex rel. Lynn v. Hamilton, W.D.N.Y., 1915, 233 F. 685, the state's attorney conceded exclusive federal jurisdiction in a memorandum adopted by the court. In re Blackbird, W.D.Wis., 1901, 109 F. 139, was commenced by federal officials seeking to establish exclusive federal jurisdiction, part of a state-federal contest including Lee v. Pero, 7 Cir., 1938, 99 F.2d 28, cert. denied, 306 U.S. 643, 59 S.Ct. 581, 83 L.Ed.

1043, Ex parte Konaha, E.D.Wis., 1942, 43 F.Supp. 747, and In re Fredenberg, E.D.Wis., 1946, 65 F.Supp. 4, in the course of which Wisconsin changed its position and, in State v. Rufus, 1931, 205 Wis. 317, 237 N.W. 67, finally held that it had no jurisdiction even as to misdemeanors. The final case cited on this point, Captain Jack, Petitioner, 1889, 130 U.S. 353, 95 S.Ct. 546, 32 L.Ed. 976, is not relevant since the Court was reviewing and held invalid the custody of a federal prisoner.

courts", but we are mindful of the fact that when petitioner was sentenced and bail was set, there was no statutory procedure governing the handling of bail pending appeal. Since that time, Rule 46(a) of the Maine Rules of Criminal Procedure has become effective.[5] This and other sections of Rule 46 make Maine procedures more comparable with Fed.R. Crim.P. 46. While an accused undoubtedly had rights to test bail under the Maine Constitution we do not say, under the circumstances of this case, for the sole purpose of guiding our discretion, that petitioner's action in withdrawing his appeal so that his time in jail would begin to run against his sentences amounted to such deliberate by-passing of state remedies as to warrant our dismissal of his petition at this time.

■ Perhaps more serious was the failure of petitioner to have attempted, immediately on withdrawing his appeal, to take advantage of the Maine Post-Conviction Relief Act. He waited sixteen days and then filed his federal petition, which, after an additional period of twelve days, finally lodged in the federal district court, with expiration of the sentence imminent. It may be, of course, that the state court may decide that withdrawal of the appeal foreclosed resort to post-conviction procedure on the ground of waiver. But, so far as this proceeding is concerned, the argument of the state's attorney before the district court and before us has been centered on the proposition that "the State of Maine post-conviction habeas corpus statute is an available state process for the testing of [petitioner's] claim * * *."

If, however, we adopt this position that remedial procedure is presently available in Maine to petitioner, only to realize that five hours have expired before sensible action can be taken to invoke the procedure, both we and the state would be in the unseemly position of closing one door on the ground that another was open, only to see that one close almost immediately.

While permitting a case to approach mootness cannot be an "open sesame" to federal jurisdiction, particularly where fundamental liberties are not at stake (cf. In re Shuttlesworth, 1962, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548, and Dresner v. Stoutamire, Crim. No. 21802, 5 Cir., Aug. 5, 1964), we think that fairness to both petitioner and the state of Maine under the exceptional circumstances of this case suggests a retention of jurisdiction to allow a realistic opportunity to pursue state remedies.

In the case before us, the Maine Superior Court's stay of execution continues until "final determination of the writ of Habeas Corpus". Under this shelter, petitioner's time does not run and he remains in the custody of his attorney, forbidden only to leave the state. Both petitioner and the state can have adequate time to prepare deliberately to proceed under the Maine Post-Conviction Relief Act. Naturally this cannot be an open-end license for delay. We therefore direct that the district court modify its order to retain jurisdiction of this matter to await the completion of further proceedings in Maine, with the proviso that the petition shall be dismissed and the writ denied if petitioner has not invoked the state post-conviction procedure within thirty days from the date of entry of the district court's action.

5. Me.R.Crim.P. 46(a)
"A defendant * * * may be admitted to bail after conviction and pending appeal in accordance with the constitution and statutes of this state. Pending appeal bail may be allowed by the justice who presided at the trial or by a justice of the Supreme Judicial Court * * *."